UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| DEXTER D. SCHULER,<br><br>　　　　Plaintiff,<br><br>　　　v.<br><br>MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL<br>SECURITY ADMINISTRATION,<br><br>　　　　Defendant. | No. CV 09-2126-PLA<br><br><br>**MEMORANDUM OPINION AND ORDER** |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on March 30, 2009, seeking review of the Commissioner's denial of his applications for Disability Insurance Benefits and Supplemental Security Income payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on April 6, 2009, and April 13, 2009. Pursuant to the Court's order, the parties filed a Joint Stipulation on November 18, 2009, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/
/

## II.
## BACKGROUND

Plaintiff was born on April 26, 1962. [Administrative Record ("AR") at 36-37.] He has an eighth grade education, and has past work experience as an in-home caretaker. [AR at 37-38, 136-37, 139, 164-71.]

Plaintiff protectively filed his applications for Disability Insurance Benefits and Supplemental Security Income payments on April 5, 2006, alleging that he has been unable to work since March 13, 2006, due to a mental stress disorder. [AR at 59-60, 116-23, 132-40.] After his applications were denied, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 61-67.] A hearing was held on March 3, 2008, at which plaintiff appeared with a representative and testified on his own behalf. A vocational expert ("VE") also testified. [AR at 32-54.] On May 21, 2008, the ALJ issued an unfavorable decision. [AR at 16-28.] When the Appeals Council denied plaintiff's request for review of the hearing decision on February 25, 2009, the ALJ's decision became the final decision of the Commissioner. [AR at 1-4, 12.] This action followed.

## III.
## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court

must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

IV.

**EVALUATION OF DISABILITY**

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

**A.    THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that he is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie

case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because he can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

B.   THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS

In this case, at step one, the ALJ concluded that plaintiff has not engaged in any substantial gainful activity since March 13, 2006, the alleged onset date of disability.[1] [AR at 21.] At step two, the ALJ concluded that plaintiff has the severe impairments of major depressive disorder and borderline intellectual functioning. [Id.] At step three, the ALJ concluded that plaintiff's impairments do not meet or equal any of the impairments in the Listing. [AR at 22-23.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[2] "to perform a full range of work at all exertional levels[3] but with the following nonexertional limitations: He is able to perform simple, repetitive work, with no more than occasional exposure to the general public and co-workers, and which does not require more than little ability to read and write." [AR at 23.] At step four, the ALJ concluded that plaintiff has no past relevant work experience. [AR at 27.] At step five, using the VE's testimony, the ALJ concluded that plaintiff "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." [AR at 28.] Accordingly, the ALJ found that plaintiff is not disabled. [Id.]

/

/

---

[1]   The ALJ also determined that plaintiff was insured for Disability Insurance Benefits purposes through June 30, 2011. [AR at 21.]

[2]   RFC is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[3]   The Administration classifies exertional work levels as sedentary, light, medium, heavy, and very heavy. See 20 C.F.R. §§ 404.1567, 416.967.

4

# V.

# **THE ALJ'S DECISION**

Plaintiff contends that the ALJ failed to properly consider whether plaintiff: (1) met or equaled § 12.05(C) of the Listing; and (2) retained the RFC to perform the occupations of a medical cleaner II and a hand bander. [Joint Stipulation ("JS") at 4-19, 22-30.] As explained below, the Court agrees with plaintiff and remands the matter for further proceedings.

**A.  LISTED IMPAIRMENT**

Plaintiff asserts that the ALJ erred in concluding that plaintiff does not meet § 12.05(C) of the Listing. [JS at 4-19.] Specifically, plaintiff contends that his mental limitations and IQ score meet the Listing. [Id.]

If a claimant has an impairment or combination of impairments that meets or equals a condition outlined in the Listing, then the claimant is presumed disabled at step three of the evaluation process, and the ALJ need not make any specific findings as to his ability to perform his past relevant work or any other jobs. See 20 C.F.R. §§ 404.1520(d), 416.920(d); Lester, 81 F.3d at 828. To meet § 12.05 of the Listing, a claimant must demonstrate that his impairment "satisfies the diagnostic description in the introductory paragraph [of § 12.05] and any one of the four sets of criteria" in paragraphs A, B, C, or D of § 12.05. 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.00(A). The introductory paragraph to § 12.05 states: "Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22. [¶] The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied." 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.05. To satisfy the requirements of § 12.05(C), a claimant must show that he has "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." Id. When a claimant has different IQ scores for his verbal, performance, or full scale IQ, the lowest score is used to evaluate if the

claimant meets or equals § 12.05 of the Listing.  20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.00(D)(6)(c).

On December 7, 2007, Dr. Rosa Colonna, a consultative examining clinical psychologist, conducted a Complete Psychological Evaluation of plaintiff that included a Wechsler Adult Intelligence Scale, 3rd Edition (WAIS-III).  [AR at 209-14.]  Based on the results of the WAIS-III, Dr. Colonna concluded that plaintiff has a verbal IQ of 80, a performance IQ of 70, and a full scale IQ of 74.  [AR at 212.]  Dr. Colonna opined that "[t]he test results appear to be a generally valid estimate of [plaintiff's] functional level,"[4] and that the test results and the clinical data indicate that plaintiff's "overall cognitive ability falls within the borderline range."  [AR at 213.]

Plaintiff worked for approximately ten years as an in-home caretaker for his mother before she died.  [AR at 38, 164, 210.]  At the hearing, he testified that the County paid him approximately $400 to $500 each month for this work.  [AR at 38.]  Plaintiff testified that his job duties included, among other things, cooking, shopping, and driving his mother around (although plaintiff did not have a driver's license because he did not know where to go for a license or how to fill out the applications).  [AR at 39, 41.]  Plaintiff also explained that he lives with his brother in a duplex; his brother lives in one unit, and plaintiff lives in the other.  [AR at 40-41.]  Plaintiff does his own cooking and cleaning and sometimes his own shopping.  He can make change and take the bus by himself, although sometimes it is hard for him to figure out how to get places taking the bus. [AR at 41-42.]

In concluding that plaintiff did not meet § 12.05(C) of the Listing, the ALJ determined that plaintiff "does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function."  [AR at 23.]  The ALJ also asserted that although plaintiff received an IQ performance score of 70, he does not meet the definition of "mental retardation" under the introductory paragraph of § 12.05, requiring "significantly sub average general intellectual functioning with

---

[4]  Dr. Colonna noted that plaintiff had invalid test results for the Minnesota Multiphasic Personality Inventory-2 (MMPI-2) that were "more than likely due to cognitive delays."  [AR at 213.]

deficits in adaptive functioning initially manifested during the developmental period," because he has functioned independently as an adult, took care of his disabled mother for many years, and expressed an interest in working on electronics. [Id.] The Court concludes that the ALJ's reasoning for concluding that plaintiff does not meet § 12.05(C) of the Listing is inadequate.

First, to the extent the ALJ rejected the validity of plaintiff's performance IQ score of 70 assessed by Dr. Colonna, which fell within the qualifying IQ range according to § 12.05(C) of the Listing, the ALJ provided insufficient reasons for doing so. The ALJ provided no explicit reasons for rejecting Dr. Colonna's finding that plaintiff's IQ scores represent a "generally valid" estimate of plaintiff's cognitive functioning. An ALJ "must provide 'clear and convincing' reasons for rejecting the uncontradicted opinion of an examining physician." Lester, 81 F.3d at 830 (quoting Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990)). Implicit reasons for rejecting an examining physician's findings are improper because they are neither clear nor convincing. See id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981) ("Since it is apparent that the ALJ cannot reject evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper.") (internal citation omitted). Further, "[t]he ALJ may not substitute his own layman's opinion for the findings and opinion of a physician." Gonzalez Perez v. Secretary of Health and Human Services, 812 F.2d 747, 749 (1st Cir. 1987). See Marcia v. Sullivan, 900 F.2d 172, 177 n. 6 (9th Cir. 1990) (an ALJ may not substitute his own observations for medical diagnoses). Because the ALJ did not provide express reasons to reject Dr. Colonna's findings that plaintiff has a valid performance IQ within the qualifying range of § 12.05(C), substantial evidence does not support the ALJ's finding that plaintiff's IQ score is invalid. See Wedge v. Astrue, 624 F.Supp.2d 1127, 1133 (C.D.Cal. 2008) (ALJ did not provide sufficient reasons for rejecting the validity of a claimant's qualifying IQ score under § 12.05(C), where the ALJ did not cite explicit reasons for discrediting the examining psychologist's opinion that the claimant had a performance IQ of 70).

Further, to the extent that the ALJ rejected the validity of plaintiff's performance IQ score of 70 because plaintiff previously worked as his mother's caretaker, expressed an interest in

electronics, and has functioned independently as an adult, this was erroneous because these functional capabilities are not necessarily inconsistent with plaintiff's mental impairment. See Gomez v. Astrue, __ F.Supp.2d __, 2010 WL 546337, at * 9 (C.D.Cal. February 10, 2010) (plaintiff's experience working for relatives and obtaining jobs with the assistance of relatives was not "materially inconsistent with an IQ signifying mental retardation"); Bailey v. Apfel, 230 F.3d 1063, 1065 (8th Cir. 2000) (error for ALJ to reject claimant's IQ due to his work history that primarily included working for his own parent); Brown v. Secretary of Health & Human Services, 948 F.2d 268, 270 (6th Cir. 1991) (ALJ's finding that plaintiff's IQ score of 68 was invalid was not supported by sufficient evidence even though claimant used public transit, had a driver's license, visited friends, could make change at a grocery store, could clean his room and do laundry, had limited reading comprehension, had completed the sixth grade, and was able to record mileage while working as a truck driver).

Next, to the extent the ALJ concluded that plaintiff does not have a physical or mental impairment imposing an additional significant work-related limitation of function, as required by the second prong of § 12.05(C), that conclusion was likewise erroneous. The regulations provide that in determining whether a claimant's impairments satisfy the second prong of § 12.05(C), "[the Commissioner] will assess the degree of functional limitation the additional impairment(s) imposes to determine if it significantly limits [the claimant's] physical or mental ability to do basic work activities, i.e., is a 'severe' impairment(s), as defined in [20 C.F.R.] §§ 404.1520(c) and 416.920(c)." 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.00(A).[5] The Ninth Circuit has held that "[a]n impairment ... may be found 'not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.'" Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005) (quoting Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1966)); see also Fanning v. Bowen, 827 F.2d 631, 633 (9th Cir. 1987) ("An impairment imposes a significant work-related limitation of function" according to the second prong of § 12.05(C) "when its effect

---

[5] 20 C.F.R. §§ 404.1520(c) and 416.920(c) define a "severe impairment" as "any impairment or combination of impairments which significantly limits [a claimant's] physical or mental ability to do basic work activities." See §§ 404.1520(c), 416.920(c).

on a claimant's ability to perform basic work activities is more than slight or minimal."). In the decision, the ALJ determined that plaintiff has the severe mental impairments of major depressive disorder and borderline intellectual functioning. [AR at 21, citing §§ 404.1520(c), 416.920(c).] As such, based on the ALJ's own findings, it appears that plaintiff's impairments satisfy the second prong of § 12.05(C) of the Listing because he has a severe mental impairment -- i.e., severe major depressive disorder -- that is distinct from his qualifying IQ score. See Gomez, __ F.Supp.2d __, 2010 WL 546337, at * 12. To the extent the ALJ found that plaintiff's impairment of major depressive disorder does not satisfy the second prong of § 12.05(C), remand is warranted to address this apparent inconsistency in the ALJ's decision. See Jackson v. Astrue, 2008 WL 5210668, at * 5 (C.D.Cal. December 11, 2008) (remand necessary where "the ALJ failed to resolve the apparent inconsistency between his finding that plaintiff's depression was severe and his finding that plaintiff did not have any other mental impairment that would impose an additional and significant work-related limitation" according to § 12.05(C) of the Listing).

      Finally, to the extent that the ALJ concluded that plaintiff did not meet § 12.05(C) of the Listing because he concluded that plaintiff's impairments did not satisfy the definition of "mental retardation" provided in the introductory paragraph of § 12.05, this too was error. "In the case of listing 12.05C, the criteria to support a disability finding require that a claimant have a valid IQ of 60 to 70 inclusive, that the evidence demonstrates the onset of the impairment before age 22, and that the claimant have an additional significant physical or mental functional limitation." Wedge, 624 F.Supp.2d at 1131. However, IQ tests performed prior to the age of 22 are not required to establish onset of the impairment before the age of 22. See Gomez, __ F.Supp.2d __, 2010 WL 546337, at *10. Rather, courts have held that a valid qualifying IQ score obtained by the claimant after the age of 22 creates a rebuttable presumption that the claimant's mental retardation began prior to the age of 22, as it is presumed that IQ scores remain relatively constant during a person's lifetime. See Jackson, 2008 WL 5210668, * at 6; see also Hodges v. Barnhart, 276 F.3d 1265, 1268 (11th Cir. 2001) ("courts have recognized [the] presumption ... that IQ's remain fairly constant throughout life") (citing Muncy v. Apfel, 247 F.3d 728, 734 (8th Cir. 2001); Luckey v. U.S. Dept. of Health & Human Services, 890 F.2d 666, 668 (4th Cir. 1989)). Accordingly, when a

claimant presents an IQ score between 60 to 70 and an additional severe mental or physical impairment, there is a rebuttable presumption that the claimant is disabled under § 12.05(C) of the Listing. See Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) ("Generally, a claimant meets the criteria for presumptive disability under section 12.05(C) when the claimant presents a valid I.Q. score of 60 to 70 inclusive, and evidence of an additional mental or physical impairment that has more than 'minimal effect' on the claimant's ability to perform basic work activities."). This presumption may be rebutted when an ALJ properly rejects the validity of the claimant's IQ score. See id. The Court finds these cases persuasive. Here, plaintiff has a performance IQ score of 70 -- i.e., within the range of § 12.05(C) -- and, according to the ALJ's decision, a separate severe mental impairment of major depressive disorder. [AR at 21, 23.] For the reasons expressed above, the ALJ failed to provide sufficient reasons for rejecting the validity of plaintiff's IQ score or for concluding that plaintiff's separate severe mental impairment of major depressive disorder did not have more than a minimal effect on his work-related functions. The ALJ also failed to raise any arguments to rebut the presumption that plaintiff's performance IQ score has remained constant throughout his life.

As such, remand is warranted so that the ALJ can reconsider whether plaintiff's severe mental impairments satisfy § 12.05(C) of the Listing. See Christner v. Astrue, 498 F.3d 790, 794 (8th Cir 2007) (remand warranted where the ALJ concluded that the claimant was "quite capable in non-intellectual areas of adaptative functioning," but failed to properly reject the claimant's IQ scores within the range of § 12.05); see also Thresher v. Astrue, 283 Fed.Appx.473, 475 (9th Cir. 2008) (remand warranted where the ALJ suggested that the claimant was not mentally retarded, but did not properly reject an IQ score that was within the range specified by § 12.05(C)) (citable for its persuasive value pursuant to Ninth Circuit Rule 36-3).

**B.   ABILITY TO PERFORM OTHER WORK**

Plaintiff contends that the ALJ erroneously concluded that he can perform the jobs of a medical cleaner II and a hand bander. Specifically, plaintiff argues that the ALJ improperly deviated from the Dictionary of Occupational Title's ("DOT") definitions of these two jobs in

asserting that they do not require the ability to read and in concluding that plaintiff could perform the jobs despite his RFC precluding him from doing jobs that require more than little ability to read and write. [JS at 22-30.]

At the hearing, plaintiff testified that he has difficulty reading and writing. Specifically, he said that he can read "certain words," cannot spell what he reads, cannot fill out forms, and some words get jumbled when he tries to read a newspaper headline. [AR at 39-40.] The ALJ solicited testimony from a VE regarding what jobs a hypothetical person with plaintiff's various limitations could perform. [AR at 50-53.] With regard to plaintiff's difficulty reading and writing, the ALJ's hypothetical question posed to the VE included a "very limited ability to read or write, so it would preclude any work ... where [he] would have to read ... instructions in writing or read as part of his job." [AR at 50-51.] The VE responded that plaintiff could perform the jobs of cleaner II (DOT No. 919.687-014) and hand bander (DOT No. 920.687-026), which, the VE explained, both have the specific vocational preparation ("SVP") level of one. [AR at 51-52.] The ALJ asked the VE, "Now what does an SVP of one job entail ... ? Is that the simplest type of work[?]" [AR at 52.] The VE replied that an SVP of one is the simplest level of work. She further explained: "It doesn't really require any reading at all. The job is explained to someone. It doesn't require any mathematics. And it's just a job where someone's told, showed what to do, and then they do the job. That's an SVP of one level. ... These [jobs] are the lowest level. The levels go up to six or seven. This is a one. And there's nothing lower than a one." [Id.] In the decision at step five of the sequential analysis, the ALJ relied on the VE's testimony that plaintiff was able to perform the jobs of cleaner II and hand bander despite plaintiff's difficulty with reading and writing. [AR at 27.] The ALJ also concluded that "[t]hese jobs do not require any reading or math." [Id.] Relying on the VE's testimony, the ALJ concluded that plaintiff is able to perform jobs existing in significant numbers in the national economy, and therefore, that plaintiff is not disabled. [AR at 27-28.]

"[T]he best source for how a job is generally performed is usually the Dictionary of Occupational Titles," and for an ALJ to properly conclude that a job is generally performed in a manner "that contradicts the Dictionary of Occupational Titles, the record must contain 'persuasive evidence to support the deviation.'" Pinto v. Massanari, 249 F.3d 840, 845-46 (9th Cir. 2001)

1  (citing Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995) (holding that the job description
2  found in the DOT raises a presumption as to how the job is performed; the presumption is
3  rebuttable if the record contains persuasive evidence to support a deviation)).  When the ALJ's
4  decision contradicts the DOT, the ALJ must offer an explanation regarding why he is rejecting the
5  DOT's description.  See Johnson, 60 F.3d at 1434.  In order for "the ALJ to rely on a job
6  description in the Dictionary of Occupational Titles that fails to comport with a claimant's noted
7  limitations, the ALJ must definitively explain this deviation."  Pinto, 249 F.3d at 847.

8        Here, to the extent the VE may have testified that <u>all</u> jobs with an SVP level of one do not
9  require any reading or mathematics, her testimony is at odds with the DOT's description of these
10 jobs.  SVP does not pertain to the level of reading or math skills required in a job.  Rather, the
11 DOT defines SVP level "as the amount of lapsed time required by a typical worker to learn the
12 techniques, acquire the information, and develop the facility needed for average performance in
13 a specific job-worker situation."  DOT, Appendix C - Components of the Definition Trailer, 1991
14 WL 688702 (1991).  Under the DOT, a level one SVP means that a typical worker will learn the
15 techniques necessary to perform the job after a "[s]hort demonstration only."[6]  Id.  However,
16 according to the DOT, a job's general educational development ("GED") level pertains to, among
17 other things, the reading, writing, and math skills required to perform the job.  Id.  The DOT defines
18 GED as "education of a general nature which does not have a recognized, fairly specific
19 occupational objective.  Ordinarily, such education is obtained in elementary school, high school,
20 or college.  However, it may be obtained from experience and self-study."  Id.  There are three
21 divisions of the GED scale: reasoning development, mathematical development, and language
22 development.  Id.  There are five defined GED levels for language development (level one has the
23 least language skills requirements and level five has the most) and six defined levels of GED for
24 mathematical development (level one has the least mathematical skills requirements and level six
25 has the most).  Id.  A language level of one requires reading skills that include the ability to

---

[6] According to the DOT, the jobs of cleaner II and hand bander both have an SVP level of one.  See DOT No. 919.687-014 (cleaner II) and DOT No. 920.687-026 (hand bander).

"[r]ecognize [the] meaning of 2,500 (two- or three-syllable) words," "[r]ead at [a] rate of 95-120 words per minute," and "[c]ompare similarities and differences between words and between series of numbers"; the ability to write "simple sentences containing subject, verb, and object, and series of numbers, names, and addresses"; and the ability to "[s]peak simple sentences, using normal word order, and present and past tenses." Id. A mathematical level of one requires an ability to "[a]dd and subtract two-digit numbers," "multiply and divide 10's and 100's by 2, 3, 4, 5," "[p]erform the four basic arithmetic operations with coins as part of a dollar," and "[p]erform operations with units such as cup, pint, and quart; inch, foot, and yard; and ounce and pound." Id. Since no jobs under the DOT have a lower GED level than one for math or language development, all jobs described in the DOT, including jobs with an SVP level of one, have reading and math requirements. Thus, to the extent the VE may have testified that jobs with an SVP level of one require no reading or math, her testimony was erroneous.

Similarly, to the extent the VE may have testified that the specific jobs of cleaner II and hand bander require no reading or math, her testimony was also inconsistent with the DOT's descriptions of these two jobs. Specifically, under the DOT, both the jobs of cleaner II and hand bander have GED language and math levels of one. See DOT No. 919.687-014 (cleaner II) and DOT No. 920.687-026 (hand bander). Therefore, according to the DOT, both jobs require that plaintiff have the ability to perform various math and reading skills. See id.; DOT, Appendix C - Components of the Definition Trailer, 1991 WL 688702 (1991).

Where there is an inconsistency between the VE's testimony regarding the requirements of a job and the DOT description of how the job is performed, there must be persuasive evidence to support the inconsistency. See Light v. Soc. Sec. Admin., 119 F.3d 789, 793 (9th Cir. 1997). Moreover, it is the ALJ's affirmative responsibility to ask about any possible conflicts between the VE's testimony and the DOT. See Social Security Ruling[7] 00-4p ("When a VE . . . provides

---

[7] Social Security Rulings ("SSR") do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

evidence about the requirements of a job or occupation, the adjudicator has an *affirmative responsibility* to ask about any possible conflicts between the VE . . . evidence and the information provided in the DOT.") (emphasis added). "The procedural requirements of SSR 00-4p ensure that the record is clear as to why an ALJ relied on a [VE's] testimony, particularly in cases where the expert's testimony conflicts with the [DOT]." Massachi v. Astrue, 486 F.3d 1149, 1152 (9th Cir. 2007).

Here, it is unclear from the VE's testimony if she intended to testify that all jobs with an SVP (or GED) level of one require no reading or math skills, or if just the two jobs of cleaner II and hand bander do not require such skills. If the VE intended to testify that all jobs with an SVP level of one require no reading or math, her testimony appears to be inconsistent with the DOT. If the VE intended to testify that the two identified jobs can be performed with no reading or math skills despite the DOT's description, then that deviation was not definitively explained. In either event, the ALJ did not fulfill his affirmative duty to clarify the VE's testimony by asking if her testimony conflicted with the DOT, and neither the VE nor the ALJ pointed to any unambiguous evidence to support the potential departure from the DOT. As such, it was error for the ALJ to rely on the VE's testimony in finding that plaintiff can perform jobs existing in substantial numbers in the national economy. Massachi, 486 F.3d at 1152. Accordingly, remand is warranted on this issue. See Light, 119 F.3d at 792 (remand warranted where "[n]either the ALJ nor the [VE] explained the reason for departing from the DOT").

**VI.**

**REMAND FOR FURTHER PROCEEDINGS**

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir. 2000), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate in order for the ALJ to: 1) reconsider whether plaintiff's impairments meet Listing 12.05(C); and 2) determine at step five of the sequential analysis whether a deviation from the job descriptions found in the DOT is proper.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: April 7, 2010

                                          PAUL L. ABRAMS
                              UNITED STATES MAGISTRATE JUDGE